HARTGROVE *v.* SOUTHERN COTTON OIL COMPANY.

Opinion delivered December 5, 1903.

1.  CONTRACT TO FEED CATTLE—BREACH.—In an action by plaintiffs to recover damages to their cattle by reason of defendant having furnished rotten cotton seed meal in violation of its contract, *held,* that, even if the plaintiffs discovered facts sufficient to cause them to believe that the meal

was not suitable to be fed to cattle, yet if they at once informed defendant's superintendent of the facts and objected to the further use of the meal, and the superintendent assured them that the meal was not bad, and the plaintiffs, acting with due care and in good faith, relied upon such assurances, and was misled thereby under circumstances calculated to mislead a person of ordinary prudence, they would be entitled to recover for any damages arising from injury to the cattle by the use of such meal up to the time when they learned that the assurances were in fact false.   (Page 36.)

2.   SAME—MEASURE OF DAMAGES.—Where plaintiffs' cattle died from the failure of defendant to perform its contract to furnish a good quality of feed, the measure of damages was their market value just before they were taken sick, with interest from the date of the injury.   (Page 37.)

3.   SAME—MEASURE OF DAMAGES.—In estimating the damages for breach of a contract to furnish a certain quality of feed for cattle, whereby they became sick, there are two rules for assessing the damages, either of which will accomplish substantial justice in this case, viz:
(1) You may allow the difference between the value of the animals immediately before they became sick and their value after they became sick; but, in determining their value after they became sick, it is proper for the jury to take into consideration the amount of care and expense reasonably required on account of the sickness, and whether the cattle were permanently injured by the sickness.
(2) Or you may allow the difference between the value of the cattle before they became sick and their value after they recovered, if they were of less value after the sickness than before, and, in addition, a sum sufficient to compensate for the loss of time, care, attention and other necessary expenses or losses caused by the sickness, including, if they are work animals, the value of their use lost by the sickness. (Page 37.)

4.   INSTRUCTION—WHEN MISLEADING.—Where the court gave two different rules for measuring the damages, either of which would have afforded substantial justice, without distinguishing one from the other, the instruction is misleading.   (Page 40.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

Reversed.

STATEMENT BY THE COURT.

The Southern Cotton Oil Company of Little Rock, Arkansas, agreed with the partnership firm of Hartgrove & Clegg that the cotton oil company would furnish to the firm cotton seed hulls, and also a quantity of prime cotton seed meal,

sufficient to feed a large number of cattle which Hartgrove & Clegg agreed to bring from Texas and to feed at the cattle pens of the company near Little Rock. The firm on their part agreed to pay to the company a stipulated price for the hulls and meal furnished by the company. The firm .claimed that the cattle became sick by reason of the fact that the company furnished inferior meal made from damaged and rotten cotton seed which was fed to the cattle, and that by this breach of the contract on the part of the company the firm suffered a large amount of damages, to recover which they brought this action at law.

The company filed its answer, denying each material allegation of the complaint, except that the contract had been made and the meal furnished.

On the trial the court refused to give certain instructions asked by the plaintiff as to the measure of damages, and gave the following instruction on his own motion:

"If you should find for the plaintiffs that the defendant was guilty of the breach alleged, and that the sickness of their cattle was the result, and you further find that as to such breach, under the rules of law as given, the plaintiffs are barred from no part of their recovery by reason of their own failure to perform their duty in the matter, then the measure of their damages would be, as to the cattle that died, their fair market value when made sick. And as to the cattle that were sick and recovered, it would be the difference between their market value when they were taken sick and their market value immediately after said sickness. And here the defendant would be entitled to the application of the rule given as to their duty to use all reasonable effort to prevent additional loss from defendant's breach of contract. If you should find that by the subsequent care and attention to the cattle by plaintiffs there was a reduction in the amount of damages as declared by above rule, then the defendant would be entitled to benefit of such reduction; and, as to the cattle which recovered and were finally sold by plaintiffs, you should take as a measure of the damages in this case the final loss in the aggregate weight of the cattle by reason of such sickness and injury as the defendant was responsible for, and also the loss in value per hundred pounds of cattle by reason of the depreciation in the quality of the cattle for beef, so far as you may

S C—2

find such elements of damage established by a preponderance of the evidence in the case. Fluctuations in the cattle market are not to be regarded by you. This estimate of damages would include the reasonable and necessary expenses, as you may find from the evidence, incurred by the plaintiffs in so caring for the cattle after their sickness, and up to the time when they were ready for the market. Remembering, in the application of these rules and measures of damages as indicated herein above, that the plaintiffs are barred from recovery of all damage, if any shown, which was the result of their own failure to exercise ordinary care and prudence in the matter of feeding their cattle on said meal. Negligence is the failure to exercise ordinary care; that is, it is the doing of something which a person of ordinary care and prudence would not do under the circumstances, or the failure to do something which a person of ordinary care and prudence would do under all the surrounding circumstances, and it is a question for the jury to settle, in view of all the evidence before them in each particular case."

There was a verdict and judgment in favor of plaintiff for the sum of four hundred dollars, from which plaintiff appealed.

*C. K. Bell,* and *W. S. & F. L. McCain,* for appellants.

The court erred in giving defendant's fourth and fifth instructions as modified. The proper measure of damages to the cattle would have been the difference between their value just before the injury and just afterwards. 50 Ark. 169; 41 Ark. 431; 147 U. S. 617; 120 U. S. 637; 46 Ark. 487. The court erred in giving conflicting rules as to measure of damages in its instructions to the jury.

*Geo. W. Williams, Sterling Pearson* and *Ratcliffe & Fletcher,* for appellee.

There was no error in the instructions complained of. No exceptions having been saved thereto in the motion for a new trial, appellant cannot complain of the giving of said instructions. 57 Ark. 153; 24 Ark. 224; cases cited in 1 Crawf. Dig. 121. The court properly refused to give the instructions asked by appellants upon the measure of damages. It was the duty of

appellants to do everything which reasonable prudence and diligence demanded to mitigate the damages and prevent further loss. 8 Am. & Eng. Enc. Law (2d Ed.), 605, 690; 56 Ark. 279; 57 Ark. 265; 105 U. S. 229; 78 Fed. 427. As to the correct rule for measure of damages in such cases, see 88 Mo. 625; 21 Ill. 630; 43 Wis. 305; 79 Ala. 298-302; 3 Wood Rys. § 423, p. 1569; 19 Ark. 175. The latter case is not overruled in 56 Ark. 169. Appellants were alone responsible for the inconsistency of their instructions as to measure of damages, and cannot complain of the giving of them by the court. 66 Ark. 588; 69 Ark. 145. No harm having resulted to appellants from any conflict in the instructions, the judgment must stand. 43 Wis. 305.

RIDDICK, J. (after stating the facts.) This is an action by plaintiffs against a cotton seed oil company to recover damages which plaintiffs allege was caused by the fact that the defendant, in violation of its contract, furnished meal made in part from rotten cotton seed, which, being fed to the cattle of plaintiffs, caused them to become sick, to the damage of plaintiffs in a large amount.

The facts are not set out in the bill of exceptions, but only those facts are stated necessary to show the bearing and pertinency of the instructions given by the court or asked by the parties.

The facts, as thus set out, show that evidence was introduced by the plaintiffs tending to show that the defendant company did for a stipulated price agree to furnish plaintiffs a sufficient quantity of cotton seed hulls and prime cotton seed meal to feed the cattle of plaintiffs, and that, in violation of this contract, the company furnished to the plaintiffs cotton seed meal mixed to the extent of eight or ten per cent. with meal which had been made from old cotton seed that had been overheated and damaged by rain and were partly rotten. The bill of exceptions further states that the evidence tended to show that "some of this meal thus mixed had been delivered and fed to plaintiffs' cattle before plaintiffs noticed that anything was wrong with the meal; and plaintiffs, having observed that their cattle were not doing well, and being expert cattle feeders and capable of telling good meal, examined the meal which was being fed to their cattle, and saw

that the meal was dark in color, tasted and smelled badly, and they pronounced it bad meal. They then reported this fact to the superintendent of the defendant, and objected to the use of such meal. He thereupon showed to plaintiffs the cotton seed cake from which he claimed that the meal that was being furnished to plaintiffs was made, and plaintiffs, seeing this was good cake, and being thus assured by the superintendent, continued to feed the meal a while longer; but, still finding that their cattle to which the meal was fed were not doing well, they went into the room where the meal was manufactured, and saw that the meal was being mixed with dark meal made from overheated seed brought over from the crop of 1898. Plaintiffs then reported this fact to the superintendent, and declined to use the mixed meal further, and thereafter they were furnished good meal.

In view of this evidence, we think the instruction given by the court on this point which is set out in the bill of exceptions is somewhat too narrow, as it fails to call the attention of the jury to the phase of the case presented by the evidence which tended to show that the superintendent, after the plaintiffs had suspected that the meal furnished was inferior and not suitable, reassured them by asserting that it was made from cake that was sound and wholesome. We agree with the contention of plaintiffs on this point that, even if the plaintiffs discovered facts sufficient to raise in their minds the belief that the meal was inferior and not suitable to be fed to cattle, yet if they at once informed the superintendent of the defendant company of the facts and objected to the further use of the meal, and if thereupon the superintendent represented to and assured them that the meal was not bad, but prime meal of the kind called for by the contract, and the plaintiffs, acting with due care and in good faith, relied upon such representations, and were misled thereby under circumstances that were calculated to mislead a person of ordinary prudence placed in like situation, they would have the right to recover for any damages arising from injury to the cattle by the use of such meal up to the time when they ascertained that the representations were in fact false and the meal was unfit to be used to feed cattle.

The plaintiffs asked an instruction somewhat on these lines, but they did not make the refusal of it a basis for their motion for new trial, so we have not considered whether it was correct or

not; but we refer to what seems a defect in the instructions on this point, for the reason that we have concluded that a new trial must be allowed on account of error committed in another instruction given by the court on the measure of damages, which we will now notice.

So far as the cattle which died from the failure of the defendant to perform its contract, the court instructed the jury that the measure of damages was their market value just before they were taken sick, and there is no doubt that this was correct, with the exception that possibly interest should be added from the date of the injury; but no complaint is made to that part of the instruction.   1 Sutherland, Damages, § 105.

As to the cattle which recovered, there are two rules for the admeasurement of damages, which, though different in form, amount in results, so far as this case is concerned, to about the same thing.   The first of these, which, theoretically at least, seems to be the most exact, and which has been adopted by this court, is to allow the difference between the value of the animals immediately before they became sick and their value immediately after they became sick.   *New York R. Co.* v. *Estill,* 147 U. S. 591; *St. L. etc. Ry. Co.* v. *Biggs,* 50 Ark. 169, 6 S. W. 724.   If the wrongful act of the defendant caused the cattle of plaintiff to become sick, then this rule gives him full compensation for the depreciation in value caused by the sickness, which is all that he is entitled to claim.   But, in order to correctly determine the value of the cattle after they became sick, it is proper for the jury to take into consideration the subsequent history of the sickness.   They should consider the amount of care and expense reasonably required on account of the sickness, and whether the cattle were permanently injured by the sickness or entirely recovered from the effects thereof.   *Lemon* v. *State,* 19 Ark. 172.   It would not be possible for the jury to correctly determine the value of the cattle after they became sick, without knowing and considering these matters. For if, under this rule, the damages are not assessed in the light of this subsequent history, and if the value of the sick cattle is estimated only as it appeared to be at the time they became sick, the result will be that the plaintiff will be allowed only his apparent damages as they appeared to be at the time the cattle were taken sick.   These apparent damages may have been greater or

less than the actual damages. It may be that to those who observed the sick cattle when they were first affected they appeared to be but slightly unwell, whereas they may have been so seriously affected that much care and attention were required to restore them to health. On the other hand, they may at that time have appeared to be in a much worse condition than they really were. It may have seemed to those who saw them that they were of no value, when in fact only a small amount of care may have been required to bring them to health again. The law seeks to give one, not his apparent, but his actual damages; and, in order that the jury may determine what those damages are, they are permitted to have before them all facts in relation to the sickness and recovery of the cattle, in order that they may allow the plaintiff full compensation for the injury sustained, and nothing beyond.

But it may not be always easy to get a jury to understand that in assessing the value of the sick cattle they are to take, not the value as it may have appeared at the time of the sickness, but the actual value as shown by the light of subsequent events. For this reason another rule is followed by some courts, and the damages assessed by allowing the difference between the value of the cattle before they became sick and their value after they recovered, if they were of less value after the sickness than before, and, in addition thereto, a sum sufficient to compensate the plaintiff for the loss of time, care, attention and other necessary expenses or losses caused by the sickness, including, where the animals are work animals, the value of their use lost by the sickness. 2 Sedgwick, Damages (8th Ed.), § 435. The object of each of these rules is to compensate the plaintiff for the loss sustained on account of the sickness and injury of the cattle, and the result of a correct application of one would in this case be about the same as the other. In the first rule, where the difference in the value of the animal before and after it became sick is taken as the measure of damages, nothing is expressly allowed the plaintiff for care and attention to the sick animal; but it is allowed in effect, for under this rule the value of the animal when sick is fixed by considering, among other things, the value of the care and attention required to cure him. For instance, suppose that the ox of plaintiff worth

one hundred dollars is made sick by the wrongful act of the defendant; suppose that after he recovers he is of the same value, but that the care, attention and other costs of his sickness amount to fifty dollars. Under the first rule the jury should say that this ox was worth $100 before he became sick, and he is worth the same now as if he had never been sick, but it took fifty dollars to cure him, therefore his value immediately after he became sick was only fifty dollars, and the difference between that and his value before sickness is fifty dollars, which is the extent of the damages to be allowed. Under the second rule they would take the difference in value of the animal before and after sickness, which in the case supposed would be nothing, and to that they would add a sum sufficient to cover the cost of the sickness, including loss of time and expenses, which would be fifty dollars, as the amount to be allowed for damages, being the same as that under the other rule. It would probably be necessary in some cases to allow interest, but no question of that kind is raised here.

Of course, it is not pretended that these rules would in all cases work out exactly the same result, but only that in this case the results would be substantially the same, and that under the facts here substantial justice would result from the correct application of either of them. Other cases with a different state of facts might present other elements of damages, and call for a corresponding modification of the rule for their admeasurement.

Now, the presiding judge seems to have had both these rules in mind. He begins by saying that the measure of damages as to the cattle that recovered is "the difference between their market value when they were taken sick and their market value immediately after said sickness." He meant by this, we suppose, the difference between their market value just before they became sick and their market value just after they bcame sick, which would be correct, but the language that he used might be given another meaning. A careless juror might understand the phrase "when they became sick" to mean after they became sick, and the phrase "after said sickness" to mean after the sickness was over, or, in other words, after they recovered. This would lead to very erroneous results. But, though the language would bear that construction, we do not think that meaning was intended, and, as no special objection was made to it, we take it that the

uncertainty was simply a mistake of form committed in the hurry of trial, which misled no one. But, passing that matter, the instruction proceeds to tell the jury that if, by subsequent care and attention to the cattle on the part of the plaintiff, there was a reduction in the amount of damages as declared by this rule, the defendant would be entitled to the reduction. Now, the idea of the court may have been correct, but the law is not correctly stated. In estimating the value of the cattle after they became sick, it is proper, as we have said, to take into consideration the subsequent history of the sickness of the cattle. If the health of the cattle has by care and attention been restored, that should be considered also, in order to correctly ascertain the value of the cattle after they became sick. When that value is ascertained, the plaintiff is entitled to the difference between that and their value immediately before they became sick, without reduction of any kind, for less than that would not give him full compensation for the injury sustained.

Again, after the court had laid down one measure of damages for the guidance of the jury, he proceeds, in the same instruction, without calling the attention of the jury to the difference between the two, to lay down for their guidance another and different measure of damages. He tells the jury in that part of the instruction that, as to the cattle that recovered, they should take as a measure of damages "the final loss in the aggregate weight of the cattle by reason of such sickness and injury as the defendant was responsible for, and also the loss in value per hundred pounds of cattle by reason of the depreciation in the quality of the cattle for beef, so far as they may find such element of damages established by a preponderance of the evidence in the case." The court then proceeds to say that "this estimate of damages would include the reasonable and necessary expenses, as you may find from the evidence, incurred by the plaintiff in so caring for the cattle after their sickness and up to the time when they were ready for the market." But this statement of the rule seems to us somewhat confusing. If the court meant by this that the measure of damages would be the final loss in value of the cattle on account of the sickness, we see no reason why the jury should be required to separate the loss in weight and the loss in beef quality, or why the court should say that the rule as stated

includes the reasonable expenses of the sickness, instead of telling the jury that to the difference between the value of the cattle before the sickness and their value after the sickness there should be added the reasonable and necessary expenses caused by the sickness.

Another objection to this instruction is that it confuses the two rules for the admeasurement of damages above referred to. The application of either of these rules would have given substantial justice, but when the court directs the jury in effect to apply both rules, without carefully distinguishing one from the other, the result is necessarily confusing.

The presiding judge may have had a correct view of the law in his mind, but in the hurry of the trial it was not clearly stated in the instruction given, some parts of which in our opinion are incorrect and misleading.

Judgment reversed, and cause remanded for a new trial.