Scott v. Altom

5-3859                                    401 S. W. 2d 734

Opinion delivered April 25, 1966

*Leon Reed* and *C. E. Blackburn,* for appellant.

No brief filed for appellee.

Ed. F. McFaddin, Justice. This is an appeal from a judgment of $150.00. Appellees, Johnny Sexton and wife, owned a tract of land in White County. They leased the land to appellee, William M. Altom, for a cattle pasture from May 1, 1963, to May 1, 1964; and then extended the lease to May 1, 1965. On September 15, 1964, the Sextons sold their land to the appellant, Carl Scott. He demanded possession of the land from Altom, who refused to surrender, claming that he had it leased until May 1, 1965.

Then Scott proceeded to take matters in his own hands. He entered on the land and drove Altom's cattle from the pasture to a farm about four miles away. When Altom threatened arrest, Scott returned the cat-

tle to a nearby farm. Altom filed this suit in chancery to enjoin Scott from interfering with Altom's use of the land until May 1, 1965, and also sought money judgment for damages to the cattle. A temporary injunction was issued against Scott, which was allowed to remain in effect until after May 1, 1965. As against Altom, Scott (a) denied Altom had a valid lease of the land; and (b) also denied that Altom had established any damage to the cattle. Scott also cross-complained against Sexton and wife, grantors in the deed. They denied liability to Scott, claiming that they had repeatedly told him of the Altom lease.

With the issues thus joined, the Chancellor heard the evidence *ore tenus* and rendered a decree: (1) for $150.00 damages for Altom against Scott; and (2) for the Sextons on Scott's cross-complaint against them. From that decree Scott brings this appeal[1] against both Altom and the Sextons, and presents three points now to be discussed.

## I.

Scott contends that Altom had no right to possession of the land because his rental contract from the Sextons violated the statute of frauds (Ark. Stat. Ann. § 38-101 *et seq*. Repl. 1962), in that the lease was for longer than one year and was not in writing. Assuming, without deciding, that Scott's contention about the statute of frauds could be raised by him, nevertheless we find no merit to such contention. There was introduced in evidence: (a) a letter from the Sextons offer-

---

[1]There is a serious question as to whether Scott has any right to appeal as against Altom, because Altom has signed a statement in this Court that he has already received the $150.00, which was the amount of his judgment against Scott. Scott claims that he deposited this amount with the Chancery Clerk in lieu of a supersedeas bond and that the money was not to be paid to Altom. Since the case is not briefed on the issue of Scott losing his right of appeal by payment, we have considered the case on the three points briefed, because even if Scott by paying $150.00 had lost his right to appeal as against Altom, still such payment would not impair Scott's right to appeal against the Sextons; and that is one of Scott's points.

ing to rent the land to Altom for one year beginning May 1, 1963; (b) the receipt, dated May 1, 1963, for one year's rent "beginning May 1, 1963, ending May 1, 1964"; and (c) the receipt dated May 2, 1964, for the rent "for one year to May, 1965." Thus, in May 1964 the Sextons rented the land to Altom for one year ending May 1965. Such an oral contract is not violative of the statute of frauds. *Alexander* v. *Hollis,* 115 Ark. 589, 171 S. W. 915; and *Boddy* v. *Thompson,* 179 Ark. 71, 14 S. W. 2d 240. Furthermore, there was a written contract for one year and a holding over for a second year, and also the two receipts. Altom certainly had the land leased until May 1, 1965.

## II.

Scott next insists that there was no evidence to support the amount of $150.00 awarded Altom as damages to the cattle. We find no merit in this point. As previously stated, Scott took matters in his own hands, and, in the absence of everyone, he drove the cattle from the rented premises a distance of four miles to another farm in an adjoining county. When he was threatened with prosecution he drove the cattle back to a farm near the one that Altom had rented. Thus, the cattle were driven in excess of seven miles. The evidence shows that there were sixteen head of the cattle, fifteen being beef cattle and one being a jersey; and that the cattle were in a good, fat, healthy condition before Scott drove them out of the pasture, and that when he returned the cattle they had lost considerable weight and were "lank." Altom testified that he had to feed the cattle for about two months to get them back in a good healthy condition; that the feed cost him sixteen bundles of sorghum hay per day for about two months; and that this had a value of $288.00.

Notwithstanding all this testimony, Scott claims that Altom failed to show damages by the proper yardstick: that is, he did not show the market value of the cattle immediately before the taking, and the market value immediately after the return. It is true that we

have held that in the injury to livestock the measure of damages is the difference in the market value before and after the injury. *St. L. I. M. & So. Ry.* v. *Biggs,* 50 Ark. 169, 6 S. W. 724. But in the case at bar, there was no showing as to the market value of the cattle in the locality; and, in such instance, the damages may be established by showing the amount reasonably and necessarily expended in restoring the animals to their previous condition. In *Hartgrove* v. *Southern Cotton Oil Co.,* 72 Ark. 31, 77 S. W. 908, there was involved the question of the damages to cattle for becoming sick by reason of bad feed; and in that case Judge Riddick used this language:

"As to the cattle which recovered, there are two rules for the admeasurement of damages; which, though different in form, amount in results, so far as this case is concerned, to about the same thing. The first of these, which theoretically at least, seems to be the most exact, and which has been adopted by this court, is to allow the difference between the value of the animals immediately before they became sick and their value immediately after they became sick. *New York R. Co.* v. *Estill,* 147 U. S. 591; *St. L. etc. Ry. Co.* v. *Biggs,* 50 Ark. 169, 6 S. W. 724. If the wrongful act of the defendant caused the cattle of plaintiff to become sick, then this rule gives him full compensation for the depreciation in value caused by the sickness, which is all that he is entitled to claim. But, in order to correctly determine the value of the cattle after they became sick, it is proper for the jury to take into consideration the subsequent history of the sickness. They should consider the amount of care and expense reasonably required on account of the sickness, and whether the cattle were permanently injured by the sickness or entirely recovered from the effects thereof. *Lemon* v. *State,* 19 Ark. 172. It would not be possible for the jury to correctly determine the value of the cattle after they became

sick, without knowing and considering these matters.''

The quoted language agrees with the facts in this case. Of course, the better rule is to show the market value immediately before the injuries and the market value after the injuries; but in the quoted language we recognized the alternate method[2] of measuring damages; and that is evidently the method that the Chancellor was obliged to use in the case at bar. In *Golenternek* v. *Kurth*, 213 Ark. 643, 212 S. W. 2d 14, there was the question of the damage to an automobile. There was no showing of market value and in allowing the amount of repairs to serve in lieu of market value, we used this language:

"In the absence of other competent proof of market value, we have held that the difference in market value before and after the collision may be established by a showing of the amount paid in good faith for the repairs necessitated by the collision. *Payne* v. *Mosley*, 204 Ark. 510, 162 S. W. 2d 889, and *Kane* v. *Carper-Dover Merc. Co., supra.* Under these cases appellee is entitled to recover only the sum of $475 for damages to the car, as that is the greatest total amount shown to have been paid for repairs. So, the item of $700 must be reduced to $475."

## III.

Appellant's third point relates to his claim against Mr. and Mrs. Sexton. He insists that he should recover from them for breach of warranty, since the deed they executed to him under date of September 15, 1964, contained no language concerning the outstanding lease to Altom. In *Ark. Trust Co.* v. *Bates*, 187 Ark. 331, 59 S. W. 2d 1025, this language appears:

---

[2]In 79 A. L. R. 2d 677, there is an annotation entitled: "Measure and elements of damages, in action other than one against a carrier, for conversion, injury, loss, or destruction of livestock."

"It is not admissible to show by parol evidence that a covenant against incumbrances was not intended by the parties to apply to a particular incumbrance, *in the absence of fraud or mistake,* where no exception to that effect is contained in the deed itself. *Hardage* v. *Durrett,* 110 Ark. 63, 160 S. W. 883, L. R. A. 1916E 211, Ann. Cas. 1915D 862; *Musial* v. *Kudlik,* 87 Conn. 164, 87 Atl. 551, 34 Ann. Cas. 1914D 1172; *Crawford* v. *McDonald,* 84 Ark. 415, 106 S. W. 206." (Emphasis our own.)

It is true that in the absence of fraud or mistake the Sextons could not introduce parol evidence to show that the covenant in the deed was supposed to exempt the particular lease, because the deed itself did not contain such exception. But we think that, as between the parties, the Sextons offered sufficient evidence to justify the Chancellor in holding that there *was a mistake.* The Sextons testified that they told Scott of the lease held by Altom. Scott's attorney drew the deed and the Sextons relied on Scott to have the correct language in the deed. His failure to have his attorney put the language in the deed constituted a mistake. There was also sufficient evidence to justify the Court in reforming the deed from the Sextons to Scott to show the Altom lease. We find no merit to Scott's appeal against the Sextons.

Affirmed.

Amsler, J., not participating.