St. Louis, Iron Mountain and Southern Railway Co.
v. Peach Orchard and Gainesville Railroad Co.

DAMAGES: *Between railroad companies: Construction of grade at intersection.*
A railway company in building its road crossed the line of a projected railway upon a grade twelve or fourteen feet above the grade of the other. No work had been done on the projected line at or near the point of intersection, nor had the right of way been acquired from the owner, nor proceedings been taken to condemn it. *Held,* no injury to the projected road for which damages could be recovered.

250    SUPREME COURT OF ARKANSAS,

St. L., I. M. and S. Ry. Co. v. P. O. and Gainesville R. R. Co.

APPEAL from *Greene* Circuit Court.
Hon. B. H. CROWLEY, Special Judge.

*Dodge & Johnson* for appellant.

The gravamen of the complaint is that by reason of defendant's unlawfully building and constructing its road-bed above the grade of plaintiff's road, that the *road-bed and right of way of plaintiff* was obtructed, to its damage, etc. Plaintiff had only an imaginary *railroad* at the point of intersection, no actual work had ever been done, and none is alleged in the complaint. The *railroad* was only in contemplation. No demand was ever made for a crossing or passage-way through defendant's embankment, and no specific damages were alleged or proved. The act of defendant in building its road was lawful (*Art. 17, sec. 1, Const.; Gantt's Dig., sec. 4943, pars. 5 and 6.*) Defendant was *first* to *build* its road across the *projected* line of appellant's *projected* road, and it had the right to cross it. Hence, plaintiff sustained no damage, alleged none and proved none, and the verdict was not supported by evidence, and is such as to shock one's sense of justice and fair dealing. Juries can not presume that there were damages, and in cases of this kind they must be proved.

*L. L. Mack* and *J. E. Riddick* for appellee.

Where a railroad company is entitled by statute to compensation for other railroads crossing its right of way, the damage may include the value of the interest or title taken and costs of changes and new structures required by reason of the crossing. *Pierce on R. R., p. 218; 121 Mass., 124.* See also *33 Barbour, 420; 87 Ill., 317; 24 Am. Rep., 345 and note 551; 14 Am. Rep., 42.*

SMITH, J. In the summer of 1881 the appellant railway company, contemplating the building of a branch rail-

way from its main line at Knobel, in the county of Clay, to New Orleans, Louisiana, commenced and worked southward to Gainesville.

Its surveyed line passed through the southeast quarter of southwest quarter of section 14, lying in township 18 north, range 5 east of the fifth principal meridian, in Greene County. This quarter section was owned by one F. S. White, a citizen of Greene County, who refused to give or sell the appellant a right of way through his place. Thereupon, on the twenty-second of October, 1881, the appellant commenced proceedings in Greene County Circuit Court to condemn the right of way. Summons was issued and served on F. S. White, the owner of the land, on October 29, 1881. Immediately thereafter the appellant commenced work through the land, and on the fifteenth day of December, 1881, had completed and in full operation its railway over this land, and was running its trains some miles south of it. On the fourteenth of January, 1882, nearly three months after the institution of the proceedings to condemn this land, and one month after the completion of appellant's railway, the owner of the land—the defendant in the condemnation proceedings—executed and delivered to the Peach Orchard and Gainesville Railroad Company, appellee, a deed to a right of way one hundred feet wide through the above-mentioned land. The right of way ran at right angles to appellant's completed road, and intersected it in an open cornfield which had been cultivated for fifteen years. Shortly after receiving this deed to the right of way, the appellee, on the fourth of February, 1882, filed its suit in the Greene County Circuit Court against the appellant, claiming $10,000 damages for crossing its projected road or right of way upon said land. To the complaint in this action, at the following term of court, a demurrer was sus-

tained and appellee amended his complaint.   A demurrer in short was interposed to the amended complaint and by the court overruled.   Appellant then answered, and upon the answer trial was had, and a verdict for $1,000 awarded appellee.   The St. Louis, Iron Mountain and Southern Railway Company, after a motion for a new trial had been overruled, saved all of its exceptions and brought this appeal.

The burden of the complaint was, that after the plaintiff's line had been located and its grade established, the defendant unlawfully and against plaintiff's remonstrance constructed its road-bed at the point of intersection, twelve feet above plaintiff's grade, whereby the plaintiff's right of way was obstructed.

No actual work is alleged to have been done by plaintiff at the place of crossing.   There was then at that point only a projected road which the plaintiff contemplated building at some future time.   Nor had the plaintiff at the date of the alleged trial acquired from the owner the right of way over the land.   As a railroad corporation it had the power to invoke the exercise of the State's right of eminent domain for the condemnation of so much of the land as was required for its use.   And it had caused a preliminary survey of its route to be made.   But nothing more having been done to fix its right at that particular place, it is difficult to understand how the plaintiff has sustained any injury for which the law awards compensation.

It was shown, that at the time of the trial the plaintiff's road was three miles distant from the contemplated crossing. The defendant had the same right as the plaintiff to build a railroad.   And the law imposed upon it no obligation to conform its grade to that of a projected or unbuilt railroad.   If, then, the defendant had only done what it was authorized to do, it has committed no wrongful act.

Though the cost of construction to the plaintiff may be enhanced by the difference in the grades, yet this is probably loss without injury.

On the subject of damages, the plaintiff's engineer gave the following testimony :

" The defendant's crossing is fourteen feet higher than plaintiff's grade, and was built in December, 1881, and its road crosses nearly at right angles. Defendant's embankment is solid, and no way is left for plaintiff to put its road through. In order to build so as to cross defendant's road on a level, it will require an embankment commencing about one mile at the north, and will extend about two thousand feet on the south, so as to get a grade to cross on a level; and, according to my estimate, it will cost, if the plaintiff builds the embankment and crosses on a level, about $16,059.61; this will be extra cost caused by defendant's embankment."

Thus the damages, if the defendant is liable at all, are wholly conjectural, dependent upon a contingency which may never occur. For, if the plaintiff should abandon its project, or if, building to the point of intersection, the defendant should make an opening in its embankment sufficient to permit the passage of plaintiff's trains through and under the existing road-bed, no damages will have been suffered. No demand for a crossing has ever been made upon the defendant.

Reversed.