The motion for a rehearing is therefore overruled.

---

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* FORT SMITH & VAN BUREN RAILWAY COMPANY.

Opinion delivered May 27, 1912.

1. EMINENT DOMAIN—CONDEMNATION OF RIGHT-OF-WAY—ISSUES.—The sole object of proceedings to condemn land for railroad purposes is to ascertain the compensation to be paid to the owner for his damages, and no provision is made for an issue on the right to condemn; the owner's remedy, when his land is sought to be taken for purposes other than a public use, being by injunction. (Page 350.)

2. SAME—RIGHT TO TRANSFER PROCEEDING TO EQUITY.—As Kirby's Digest, secs. 6769, 6770, providing for the condemnation by one rail-

road company of the right to cross another railroad company's track, gives only the right to ascertain the points and manner of such crossing in addition to ascertaining the amount of compensation to be paid, the right of the petitioner can not be questioned in that proceeding; and where such right is questioned by sufficient allegations, it is the duty of the court to transfer the proceeding to equity for determina. tion.   (Page 350.)

3.   SAME—APPLICATION TO TRANSFER TO EQUITY—SUFFICIENCY OF ALLE-GATIONS.—In a proceeding at law by a railroad company to condemn a right-of-way across another railroad, defendant filed a cross com-plaint, alleging that petitioner was not so chartered as to enable it it to maintain the suit; denying that it had become necessary for pe-titioner to make the proposed crossings; alleging that it was unwise for petitioner to have such crossings, and that the construction of petitioner's line will result in damage to defendant's property; also alleging that petitioner's proposed line was to be a mere switch line without a main line, and was intended to serve private industries only in which it would be financially interested, and to which the public would have no access, and that petitioner does not intend to maintain any station buildings.   *Held*, that such allegations did not raise an issue as to petitioner's right to condemn.   (Page 351.)

4.   SAME—PUBLIC PURPOSE.—The fact that a railroad company was intended by its promoters to subserve private industries in which they were financially interested is not inconsistent with its being a public carrier, and entitled to exercise the right of eminent domain. (Page 353.)

5.   RAILROADS—CHARTERS—EXTENSION OF PERIOD FOR CONSTRUCTION.— Under Kirby's Dig., sec. 6601, providing for the granting of railroad charters to be constructed within a specified time upon pain of forfeiture, and impowering the Board of Railroad Incorporators to extend the time for construction, *held*, that the fact that a forfeiture had accrued before the extension of time was granted did not deprive the board of the power to grant such extension.   (Page 353.)

6.   EMINENT DOMAIN—CROSSING ANOTHER RAILROAD—PLACE.—Kirby's Dig., sec. 6770, providing for condemnation by one railroad of the right to cross another railroad, in impowering the courts to ascertain and determine the points and manner of such crossing, did not authorize the courts to compel the petitioner to make the crossing at some other point.   (Page 356.)

7.   SAME—CROSSING ANOTHER RAILROAD—DAMAGES.—The fact that defendant railroad company, in the exercise of its power to extend its road, constructed an extension to provide railroad facilities for cer-tain industries in such manner as to obstruct the projected building of petitioner's line did not make such construction wrongful nor authorize the imposition of the cost of constructing crossings for petitioner over defendant's line on defendant.   (Page 357.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed in part.

*Lovick P. Miles,* for appellant.

1. The court erred in refusing to transfer to equity. Kirby's Dig., § 6770; 76 Ark. 239; 91 *Id.* 231; 57 Ark. 367; 109 Ill. 237; 91 Ark. 231; 43 *Id.* 111. The statutory proceeding to condemn crossings is established to ascertain (1) the points of crossing, (2) the manner of crossing, and (3) the compensation for crossings, and no provision is made for an issue upon the right to condemn. Cases *supra* and also 59 Ark. 171; 78 *Id.* 83.

2. The court erred in refusing to find for defendant and in refusing to find that appellee was not incorporated or entitled to exercise the right of eminent domain. Kirby's Digest, § 6601; 68 Ark. 134; 148 N. Y. 540; 36 Conn. 196; 78 N. Y. 529; 38 Kan. 752; 34 Ill. 320; 45 Cal. 365; 3 Cranch (U. S.) 151. (a) The State board has no power to extend a charter after forfeiture. 2 Ark. 229; 11 *Id.* 44; 17 *Id.* 608; 15 *Id.* 555; 28 *Id.* 200; 38 *Id.* 205; 76 *Id.* 303; 71 *Id.* 561. (b) The evidence fails to show the building and completion of one-tenth of the line within eighteen months.

3. The court erred in refusing to declare it had the power, right or duty to fix the points of crossing elsewhere than appellee sought them. Kirby's Digest, § 6770; 3 Elliott on Railroads, (2 ed.) § § 1120-4-5a; 207 Pa. St. 406; 180 *Id.* 634; 33 Cyc. *et seq.*; 150 Pa. St. 193; 122 Pa. St. 513; 160 *Id.* 623; 8 Fed. 858; 34 Pac. 558; 62 Md. 343; 73 S. W. 488.

4. The court erred: (a) In refusing to recognize its duty or power to fix the terms and conditions upon which the crossings should be installed and to cover such details as are ordinarily covered by contracts. (b) In refusing to incorporate in its judgment substantially the terms and conditious of exhibit "A" to answer and cross bill. 33 Cyc. 256; 110 Mo. 510; 19 Hun 38; 35 *Id.* 232.

5. No costs of crossing should have been assessed against appellant. 42 Ark. 249; 81 *Id.* 195; Elliott on Railroads, vol. 3, (2 ed.) § 1128.

*Read & McDonough* and *S. W. Moore,* for appellee.

1. The allegations in the answer and cross complaint were insufficient to authorize a transfer to equity. Kirby's

Dig., § § 5980, 5983, 6091, 6098; 36 Ark. 446; 99 Ark. 61; 73 Ark. 7, 344; 50 Ala. 439; 3 Dana 73; 33 Miss. 171; 4 Enc. Pl. & Pr. 606; 58 Ala. 314; 56 N. H. 114; 31 Cyc. 108; 8 Fed. 529; 71 Ark. 222; 99 Ark. 61; 60 *Id.* 606; 35 *Id.* 109; *Ib.* 104, 555; 95 *Id.* 6; 91 *Id.* 231; 76 *Id.*; 63 *Id.* 94; 43 *Id.* 111.

2. If the Frisco contract was not a completion of one-tenth of the line, the charter is still valid because of the extension by the Board of Railroad Incorporators of the time.  47 S. E. 839; 13 L. R. A. 699; 59 Ark. 66; 138 U. S. 1; 41 Ark. 436; Kirby's Dig., § § 6545-6, 6601; 20 Ark. 495; *Ib.* 443; *Ib.* 204; 128 N. Y. 240; 103 Ill. 491; 44 U. S. 534; 133 *Id.* 198; 137 Mass. 71; 33 Cyc. 40, and notes; Const. Ark. art. 12, § 2, art. 17, § § 1, 7, 9; 5 Thompson on Corp. § 6597; 2 Elliott on Railroads, § 696; 1 *Id.* § 20; 103 Fed. 747.

3. The court simply held that the points where crossings were sought were the most feasible points for crossings.  Under our Constitution and statutes the court could not adopt any other places of crossings.  3 Elliott on Railroads, § 1128; 42 Ark. 249.

4. No unreasonable expense should be put upon a new company seeking a crossing.  94 Pac. 907; 102 Pac. 778; 103 Fed. 747; 118 Mo. 502; 30 Oh. St. 604; 118 Mo. 502; 105 Ill. 388; 20 S. W. 319; 121 Mass. 124; 36 Conn. 255; 97 Mo. 457; 159 Mass. 283.

5. The cost of crossings was properly assessed.  Kirby's Dig., § § 2954, 2962.

6. Appellant is estopped.  98 Ark. 439; 80 *Id.* 543; 91 *Id.* 141; 75 *Id.* 410; 36 *Id.* 663; *Ib.* 465; 51 *Id.* 235; *Ib.* 491; 2 Thompson on Corp. § 1991.

McCULLOCH, C. J.  Appellee is a domestic railway corporation chartered for the purpose of constructing and operating a railroad from the city of Fort Smith, Arkansas, to the city of Van Buren, a distance of about five miles.  Its proposed line crosses, in the city of Fort Smith, the main track and certain sidetracks and spurs of appellant railway company, and it seeks in the present proceeding to condemn the right-of-way for these crossings, seven in number.

The statutes of this State contain the following provisions concerning the rights of intersecting railroads:

"Section 6769.  Every railroad corporation created and

organized under the laws of this State, or created and organized under the laws of any other State or the United States, and operating a railroad in this State, shall have the power to cross, intersect, join or unite its railroad with any other railroad now constructed, or that may hereafter be constructed, at any point on its route and upon the grounds and right-of-way of such other railroad company, with the necessary turnouts, sidings and switches and other conveniences in furtherance of the object of its construction. And every railroad company whose railroad is or shall be crossed, joined or intersected by any new railroad shall unite with the owners and corporation of such new railroad in forming such crossing, intersection and connection, and shall grant to such railroads so crossing, intersecting or uniting all the necessary facilities for that purpose as aforesaid.

"Section 6770. If the two corporations can not agree upon the amount of compensation to be made for the purposes set forth in the foregoing section or the points or manner of such crossing, junctions or intersections, the same shall be ascertained and determined by a court of competent jurisdiction in the same manner as provided for the ascertainment of damages for right-of-way for railroads." Kirby's Digest.

Maps or blueprints of the proposed line of appellee's road and of the crossings sought to be condemned were filed with the complaint, and it is alleged in the complaint that the two corporations had failed to agree as to the said crossings. Appellant filed an answer containing the following statements: "Plaintiff   *   *   *   is not a railroad corporation created, organized and existing under the laws of the State of Arkansas; it is not entitled, under the law, to bring and maintain an action for the condemnation of the crossings. * * * The plaintiff has not found it necessary to cross, intersect or unite its railroad with the railroad of the defendant, as shown in the complaint; denies that it has become necessary for the railroad purposes of plaintiff, in constructing its main line of railroad from Fort Smith to Van Buren, to make the crossings shown in the blueprint; says that it is wholly unnecessary, unreasonable and unwise for plaintiff to have the crossings Nos. 1 to 7, inclusive, demanded as set out in the complaint; the location of the said line of plaintiff is into, through and upon that por-

tion of the property of defendant devoted to yard use, and to the service of industries, and the construction of the line of plaintiff, as proposed in the complaint herein filed, will result in the destruction of, and damage to, the property of defendant, and in an unsafe and inefficient railroad for plaintiff."

The answer is made a cross complaint, asking that the cause be transferred to the chancery court, so that equitable relief might be granted, and as ground for such relief the following statement is made:

"Defendant says that it is informed and believes and alleges upon information and belief that the Fort Smith & Van Buren Railway Company is a private enterprise which was chartered ostensibly to build a line from Fort Smith to Van Buren, Ark., but it is not so chartered at the present time, and that it has no intention of constructing such a line, and does not intend to build or operate any line as authorized by its charter, but seeks to condemn solely for the construction of a switch or switches, while never intending to own or operate a main line with which to connect; its proposed line, as now projected, is not intended to, nor will it, be a main line, nor an aid to the convenience of operation of any main line of plaintiff; it is conceived and intended to serve only private industries, in which it will be financially interested, and to which the public will have no access in common; it does not intend to locate or maintain any station buildings, or to render the public service contemplated by the laws and by the Board of Railway Incorporators when its charter was granted; it has not acquired any right-of-way in the city of Van Buren, nor any terminal facilities; has made no provision for crossing the Arkansas River at Van Buren; has acquired no right-of-way between the city of Van Buren and a point approximately one mile and a half northerly from its crossing of defendant's line at No. 1; nor has it done any construction work within such distance from the town of Van Buren, notwithstanding its charter was issued April 9, 1910; the present purpose of plaintiff is entirely in conflict with, and constitutes an abandonment of, the purposes for which it was chartered, as will more fully appear upon a full disclosure of its records, to which defendant has not now access; it is now seeking to use its alleged articles of incorporation as a subterfuge with which to subserve only the private interests

of its stockholders, and the result will be, if permitted, the perpetration of a fraud upon the State by exercising the right of eminent domain of the State for a purpose not contemplated by the State when its charter was granted; and its present purpose is to use such charter as subterfuge to take the property of this defendant and impose an irreparable loss upon defendant for a purpose not contemplated by said charter."

The court overruled the motion to transfer, and proceeded to the trial of the cause, the parties waiving trial by jury and agreeing that the case should be tried before the court sitting as a jury.

The first assignment of error is as to the ruling of the court in refusing to transfer the case.

This court has repeatedly held that the sole object of the statutory proceedings to condemn land for railroad purposes is to ascertain the compensation to be paid to the owner for his damages, and that no provision is made for an issue upon the right to condemn, but that "the owner is not without remedy when his land is sought to be taken for purposes other than public use, and the courts of equity will mould an adequate remedy by injunction in order to give relief." *St. Louis, I. M. & S. Ry. Co.* v. *Faisst,* 99 Ark. 61, and cases cited. All of our decisions on this subject have been rendered in controversies between railway companies and individual owners as to the right of the former to condemn. None of the cases involves a controversy between two railway corporations as to the right of one to condemn a crossing over the other's line. The only difference between the respective statutes providing for the proceeding is that, as to the condemnation of private property for railroad purposes, the sole inquiry is to ascertain the amount of compensation, whilst in the proceedings to condemn a crossing over another railroad, where the two parties have failed to agree "upon the amount of compensation to be made or the points or manner of such crossings, the same shall be ascertained and determined by a court of competent jurisdiction in the same manner as provided for the ascertainment of damages for right-of-way for railroads."

The doctrine established by our previous decisions is that a railroad corporation is, by its charter, clothed with the power of eminent domain to the extent of its necessities, and

that this gives it a *prima facie* right to condemn, which can not be questioned in a statutory action at law brought in the exercise of its power of eminent domain. *Niemeyer* v. *Little Rock Junction Ry. Co.*, 43 Ark. 11, settles that question, we think, beyond dispute, and the only remedy is by injunction granted by a court of equity or by transfer to such court for equitable relief for the purpose of ascertaining the right of a corporation to exercise the right of eminent domain. That is the same as an independent suit in equity for an injunction. This applies to a suit by one railroad to condemn for the purpose of crossing the line of another railroad. The statute gives the court in those cases only the right to ascertain "the points and manner of such crossing," and in addition to ascertaining the amount of compensation to be paid. The Constitution of this State (art. 17, sec. 1) declares that "every railroad company shall have the right with its road to intersect, connect with, or cross any other road;" and whenever that right is asserted in an action at law to condemn, it can not be questioned in that forum. The only remedy is in a court of equity, to which the cause may be transferred on proper showing of facts sufficient to justify equitable relief, as indicated in the decision referred to.

It follows, therefore, that appellant was entitled to have the case transferred to equity for the purpose of determining appellee's right to exercise the power of eminent domain, upon sufficient allegations of facts and proper verification.

The next question to be considered is, were the allegations of the cross complaint sufficient to warrant the court in transferring the case for equitable relief? Our conclusion is that the allegations were not sufficient for that purpose. They were too vague and indefinite, and amounted only to statements of conclusions which were not sufficient to warrant a restraint of appellee's right to exercise its charter powers.

The allegation that the corporation "is not so chartered at the present time" does not, as will presently be shown, constitute ground for equitable relief, as that was sufficient to raise an issue at law as to the right to condemn. Nor is the allegation that appellee "seeks to condemn solely for the construction of a switch or switches, while never intending to own or operate a main line with which to connect," and that "it does not intend to locate or maintain any station buildings,"

sufficient to deny it the right of eminent domain.  The same may be said of the allegation that appellee has not acquired any right-of-way or terminal facilities in the city of Van Buren, and has made no provision for crossing the Arkansas River, etc.  The nearest approach to a statement sufficient to warrant equitable interference is the statement that appellee's proposed line "is conceived and intended to serve only private industries, in which it will be financially interested, and to which the public will have no access in common."  This, after all, is only a statement of a conclusion, and does not state a fact from which the court can draw conclusions.  It may be true that the proposed line is intended to serve only private industries, in which its promoters will be financially interested, and yet the corporation would be a public carrier, with the right to condemn property for such purposes.  The fact that private purposes are subserved would not exclude the idea that the public may also participate in the enjoyment of the utility. The law gives all the right to use it on equal terms, and, as we declared in the recent case of *Ozark Coal Co.* v. *Pennsylvania Anthracite Railroad Co.*, 97 Ark. 495, this makes the use a public one, even though private interests are primarily intended to be served.  In *Railway Co.* v. *Petty*, 57 Ark. 359, the court, speaking through Chief Justice Cockrill, said:

"If it is an aid in facilitating the business for which the public agency is authorized to exercise the power to condemn, or if the public may enjoy the use of it, not by permission, but of right, its character is public.  When once the character of the use is found to be public, the court's inquiry ends, and the legislative policy is left supreme, although it appears that private ends will be advanced by the public user.  There are numerous cases holding that a railway built for the purpose of reaching a coal mine or a manufacturing establishment is a public enterprise entitled to exercise the power of eminent domain, provided the public has the right to use it.  That right makes the use public."  To the same effect, see *Cloth* v. *Chicago, R. I. & P. Ry. Co.*, 97 Ark. 86, where we said that the mere fact that private ends of others will be advanced by such public user will not defeat the right to condemn property.  The allegation goes further, and states, it is true, that appellee's road is one "to which the public will have no access in common."

But that is entirely too vague to be treated as a sufficient statement of facts showing that the public will not have the right to use the line.   Injunctions are granted, not altogether as a matter of strict right, but to some extent in the discretion of the court, and, as said by Judge EAKIN in *Niemeyer v. Little Rock Junction Ry. Co.*, *supra*, "the propriety of an injunction depends much upon the particular circumstances of each particular case."   In the same case it was said by the court that, in testing the sufficiency of the allegations of a complaint seeking an injunction in a case of this sort, only such allegations of fact as were properly made should be taken as true, and that all vague and general language should be discarded. Learned counsel for appellee rely upon the case of *Mountain Park Terminal Ry. Co. v. Field*, 76 Ark. 239, as an analogous one as to the sufficiency of the statement of facts.   An examination, however, of the cross complaint in that case shows an altogether different statement of the facts.   There was a definite and certain statement there showing that the asserted right to condemn involved merely a controversy between two property owners, one claiming the right of eminent domain under the guise of a franchise the exercise of which would not be of a public nature, and necessarily, under the facts of the case, could not be.   The statement of facts showed clearly that the construction of the alleged railroad would operate as a denial to the objecting land owner of the use of his property, and that in the very nature of the situation the line could not be used by any one else.   The facts of that case, as stated in the pleadings, made it a typical one, we think, for equitable interference, and, measured by the standard there established, the allegations in the present complaint fall far short of being sufficient to warrant the court in restraining a corporation of this kind from exercising its charter powers.   The allegations of the cross complaint need not be fully analyzed, but our conclusion, upon the whole, is that there was not sufficient statement of facts to warrant the transfer of the cause to a court of equity, and the court did not err in refusing to do so.

The next contention is that appellee had forfeited its charter rights by failing to construct the required portion of its line within the time required by the statute, which reads as follows:

"Hereafter, upon the granting of any railroad charter under the provisions of this act, it shall be the duty of the incorporated company to forthwith proceed with expedition to carry out and execute its contract with the public, and to build the prospected road through the territory occupied and appropriated by it, according to the lines laid down by its preliminary surveys. Failure, within eighteen months, to build and complete at least one-tenth of the estimated length of its prospected line shall forfeit its charter without action on the part of the State. Failure to build and complete within thirty-six months one-fifth of such line shall in like manner operate as a forfeiture, except as to such line as may be at that time actually completed; and failure to complete the entire line within six years shall in like manner operate as a forfeiture, except as to such number of miles as may be actually completed, and the provisions of this section shall apply to all companies and branches heretofore incorporated under laws heretofore in force in such manner as to require them, under like penalties, to build and complete proportionate parts of uncompleted roads according to the proportions herein named; provided, that any action heretofore or hereafter formed may refer the matter to the said board, which upon a hearing may, if in its judgment it believes the best interest of the public require it, extend the time herein named, not to exceed three years for completing 10 per centum, six years for completing 20 per centum, and eight years for completing the entire line, and thereupon the respective forfeitures herein provided for shall not be enforced except upon failure to build the respective proportions of any such road, according to the terms of such extensions as granted by the board." Kirby's Digest, § 6601.

That is a question which could properly be pleaded as a defense at law to the right to condemn; for, if appellee had lost its charter powers, its right to condemn could be called in question at any time, as the continued existence of its charter powers is that which gives it *prima facie* the right to condemn.

The Fort Smith & Van Buren Railway Company was incorporated by the State Board of Railroad Incorporators on April 9, 1910, and the evidence shows that up to the expiration, on October 10, 1911, of the eighteen-month period, the

corporation had not completed as much as one-tenth of its proposed mileage. On October 24, 1911, the State Board of Railroad Incorporators extended the time for the construction of one-tenth of the proposed line for a period of six months from that date. The contention is that the charter was forfeited on the date of the expiration of the first period; that the corporate existence absolutely ceased at that time, and that it was beyond the power of the State board to grant further extension. In other words, that the extension must have been made before the forfeiture occurred; otherwise it was beyond the power of the State Board of Incorporators to revive the powers of the corporation or to renew an existence which had absolutely ceased. The argument of counsel is not without considerable force, but from a careful consideration of the statute we are of the opinion, from the language of the statute, that its framers intended to confer upon the board of incorporators the power to grant an extension for the stated periods after the expiration of the periods named. It is true that the corporation ceased to exist without action on the part of the State, upon failure to complete the required portion of its road within the time named, but this provision of the statute is coupled with the further condition that the board may extend the time for completing the work, and the statute does not expressly prescribe any period within which the extension must be granted. It is obvious, from a reading of the statute, that the maximum period of extension must run either from the date of the original charter or from expiration of the original time limit. It is unnecessary in the present case to decide which. of these points the extension must run from, except to say that it does not run from the time it is granted. That would operate to limit the time for granting the extension to a period within which the extension is authorized by the statute to run. It is argued that this construction of the statute would operate to keep other proposed lines out of the same territory for the period allowed for granting extensions, even after the corporation had ceased to exist by reason of its failure to complete the required portion of its line. This does not necessarily follow. After the charter powers have ceased by reason of the failure to comply with the terms of the statute, it is then within the power of the State board to charter another corpora-

tion for the purpose of occupying the same territory, and this would necessarily result in preventing a renewal or extension of the original charter rights. When the territory ceases to be occupied on account of the forfeiture of the charter rights of the original corporation, the board can either renew the charter of the original corporation by granting an extension for the specified time, or can grant a charter to a new corporation upon compliance with the terms of the statute, and the fact that the board is invested with continued power, within a certain period, to grant an extension does not necessarily imply a lack of power to charter a new corporation to occupy the same territory, even though it prevents future renewal of the old charter powers. The statute provides that the matter may be referred to the board, "which, upon a hearing, may, if in its judgment it believes the best interests of the public require it, extend the time herein named." The board is not compelled to grant an extension, but may do so if in its judgment the best interests of the public require it. It may, as before stated, grant a charter to a new corporation. The whole matter is left within the judgment and discretion of the State board, and we think it is clear that the power of the board to grant an extension is not limited to an order of extension made before the expiration of the original time specified in the statute. The order of the board in this instance stipulated that the time should run from the date the order was made; but, as this did not extend the period of the extension beyond the time allowed by the statute, the power of the board was not exceeded. It follows that appellee has not lost its charter powers, and the circuit court properly so decided.

Upon examination of the testimony, our conclusion is that it is sufficient to sustain the finding of the court and its judgment awarding appellee the right to cross appellant's tracks at the place named. In arriving at this conclusion the court took into consideration the alleged increased danger to appellant, and the feasibility of crossing at this place as compared with other points, and the decision of the court in that respect is sustained by sufficient evidence.

It is insisted that the court erred in refusing to declare that it had power under the statute to require appellee to

cross at some other point. The statute provides that the points and manner of such crossing "shall be ascertained and determined by a court of competent jurisdiction." But this does not mean that the court has the power to compel the company to make the crossing at some other point or in some other manner. The inquiry is, whether or not the crossing should be established at the point claimed by the company seeking to condemn, and, for the purpose of determining that question, it is proper to inquire whether or not it is more feasible for the crossing to be established at some other point; but the court had no power to compel the company to seek another crossing. If the court decides against the right to cross at the point claimed, then the crossing can not be established there, and the company claiming the right to cross must accept some other point found by the court to be the proper place, or not cross at all. We understand from the written opinion filed in the record, which constitutes the findings of the court, that it found the crossing could properly be established at the places claimed; and, as the state of the testimony does not justify us in disturbing that finding, we will not do so merely because the court refused to declare the law in accordance with the request of appellant.

When the court ascertained that the point claimed was a proper place for the crossing, the inquiry ended except as to the assessment of damages. The court assessed damages in favor of appellant in the sum of $1,000 for only four of the crossings. The other three crossings were over the track which appellant had constructed after appellee had laid out and staked its proposed line. The court found that this line was constructed by. appellant for the purpose of obstructing appellee in the building of its line, and assessed against it in favor of appellee the sum of $1,400 as the cost of constructing the new crossing. We are of the opinion that the court was in error in holding that appellant was not within its rights in constructing the new line, and that it violated the charter rights of appellee in doing so. It appears from the testimony that this line was constructed and put into operation by appellant for the same reason that appellee is constructing its line, that is, for the purpose of serving certain industries. Appellant constructed its new line within its own territory, and it had a

right to do so.  The same reasons that would constitute appellee a public carrier in the use of the line above constructed establishes the same character for the new line of appellant, and does not make it an obstruction to appellee in the assertion of its rights.  The fact that appellee had staked out its line did not prevent the appellant from building a new line which intersected that route, or render it liable in damages for enhancing the cost of constructing the crossing.  "The expense of constructing the crossing," says Judge Elliott, "must be borne by the company seeking the crossing.  In the absence of any statutory enactments regulating the subject, the rule seems to be that the last company must at its own expense construct the crossing."  3 Elliott on Railroads, § 1128.

The point involved here seems to be directly decided by this court in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *P. O. & G. R. R. Co.*, 42 Ark. 249, where (quoting the syllabus) it was said:

"A railway company in building its road crossed the line of a projected railway upon a grade twelve or fourteen feet above the grade of the other.  No work had been done on the projected line at or near the point of intersection, nor· had the right-of-way been acquired from the owner, nor proceedings been taken to condemn it.  *Held*, no injury to the projected road for which damages could be recovered."

In the opinion the court said:

"It was shown that at the time of the trial the plaintiff's road was three miles distant from the contemplated crossing. The defendant had the same right as the plaintiff to build a railroad.  And the law imposed upon it no obligation to conform its grade to that of a projected or unbuilt railroad.  If, then, the defendant had only done what it was authorized to do, it has committed no wrongful act.  Though the cost of construction to the plaintiff may be enhanced by the difference in the grades, yet this is probably loss without injury."

This phase of the case turns entirely, we think, upon the question whether the appellant was within its rights in building the new line.  If it was, it is not liable for the cost of the crossing, even though it operated as an obstruction to appellee in putting upon that company the enhanced cost of making the crossing.  We think it is clear that appellant was within its

rights, and, being the first company to construct a line, the cost of the crossing must fall upon the last company, which is seeking to cross the line of the first.

The judgment of the circuit court, ascertaining and fixing the point and manner of the crossing and in assessing the appellant's damage at the sum of $1,000, is affirmed; but the judgment against appellant for the cost of the other three crossings is reversed, and judgment will be entered here in appellant's favor for the sum of $1,000 according to the findings of the court below.