SELLE *v.* CITY OF FAYETTEVILLE.

4-7473                                                   184 S. W. 2d 58

Opinion delivered November 27, 1944.

*Frank Nesbitt* and *Lee Seamster*, for appellant.

*Price Dickson* and *O. E. Williams*, for appellee.

SMITH, J. No testimony was heard at the trial from which is this appeal, the case having been disposed of on the pleadings. We, therefore, copy so much of the pleadings as is necessary to present the questions involved.

Condemnation proceedings were instituted by the city of Fayetteville, under the authority of Act 135 of the Acts of 1929, Vol. 1, p. 705, to construct an airport. This act appears as §§ 10037-10041, Pope's Digest. Section 2 of the act reads as follows:

"The real property for such airports or flying fields may be acquired by gift or purchase, or by the exercise of the right of eminent domain which is hereby granted to such cities for such purpose. Provided the general fund of any city shall not be used for such purpose. The procedure for the exercise of the right of emi-

nent domain shall be that prescribed by law for the exercise of such power by railroads.''

. The petition for condemnation alleged that Clyde Selle and the other appellant here are the owners of a certain 165-acre tract of land, which the city required for the purpose of constructing the airport, and that the city has been unable to obtain the land by purchase from the owners, wherefore, it was prayed that the court fix an amount to be deposited by the petitioner to authorize the immediate entry upon the land, and that the cause be heard to determine the amount of compensation due the landowners, in the manner prescribed by law.

The petition was presented to the court and on September 20, 1943, an order was entered requiring a deposit of $5,000 by petitioners as a condition precedent to the city's right to enter upon and to take possession of the land. This deposit has never been made. Notice of this order was duly served upon the landowners. A trial in the circuit court before a jury was had on November 1, 1943, and a verdict was returned fixing the value of the land at $16,000. A motion was filed by the city to dismiss the proceeding, which recited that on November 23, 1943, which was within less than 30 days of the judgment rendered November 1, 1943, the city had served notice upon the landowners that it had elected to abandon the condemnation proceeding.

The landowners filed a response to this motion, in which they alleged:

1. That the cause had proceeded to a verdict and judgment and the city was not entitled to dismiss the proceeding.

2. That the cause had been dismissed to clear the way for another suit having the same purpose, and praying that if the cause were dismissed it should be with prejudice against instituting another suit for the same purpose.

3. That before the city should be permitted to dismiss the cause even with prejudice to another suit, the

city should be required to pay the expenses and costs to the landowners in defending the suit as follows: attorney fee, $1,700; cost of witness and proper defense, $500; and for placing cloud on title, $500. All of which the city should be required to pay before dismissing the suit.

4. That if the city were permitted to dismiss, it should be required to restore the landowners to the position they were in before the institution of the proceedings.

5. That the landowners have another suit pending to recover costs and damages which should be consolidated and heard with the motion of the city to the end that all the issues between the parties might be settled.

The suit referred to was brought by the landowners against the city, and recited the facts hereinbefore stated. It was alleged in this complaint, in addition, that the landowners had incurred expenses in preparation for the trial of the condemnation suit, including the employment of an attorney. It was also alleged that the city was not in good faith in attempting to abandon the condemnation suit, but intended to harass the landowners into accepting a compensation less than that fixed by the verdict of the jury and the judgment of the court.

The lack of good faith on the part of the city was further alleged in that the city did not intend to use all of the land it had condemned, but had arranged to sell 40 acres thereof for private purposes, and at a profit. Whereupon it was prayed that if the city were allowed to dismiss the proceedings, it be required to pay the damages above claimed.

There was a motion to strike the response of the landowners, which was considered along with the other pleadings, from which it was ordered and adjudged that the city had properly abandoned the condemnation proceedings, and had not entered upon the land, and had made no payment or deposit, and in abandoning the condemnation proceedings had forfeited all rights in the premises, but was not entitled to dismiss the suit.

The motion to strike the response was treated as a demurrer and was sustained as such for the reason that

there is no law authorizing the defendant in a condemnation suit to recover expenses as damages in such cases. The landowners refused to plead further and their claim for damages and expenses was dismissed.

The city excepted to the refusal of the court to dismiss the proceedings and the landowners excepted to the holding that they are not entitled to recover expenses and damages and in permitting the city to abandon the proceedings, and both parties have appealed. The city has paid the costs of the original condemnation proceedings.

We consider first the right of the city to abandon the proceedings. We think it has that right and the permission of the court was not necessary to its exercise, but we consider later the consequences of that action under the pleading set out above.

There is an exhaustive annotation of this question appended to the case of *Cunningham* v. *Memphis R. T. Co.*, 126 Tenn. 343, 149 S. W. 103, Ann. Cas. 1913E, 1058, and the annotator summarizes the numerous cases there cited and reviewed, with the statement that in the absence of a statute fixing the time within which a discontinuance may be had, the general rule unquestionably is that the proceedings may be dismissed at any time before the rights of the parties have become reciprocally vested, and that the cases are divided into two groups, the majority of the cases holding that the rights of the parties are not vested until the amount of the award is paid, or the land is taken, while in some jurisdictions the confirmation of the award by the court vests the rights of the parties and precludes discontinuance.

It was there pointed out that the cases cited had construed the statutes of the states in which the decisions were rendered. The annotator then takes up the separate laws of the several states, and as to Arkansas says:

"In Arkansas actual payment of the compensation seems to be prerequisite to the vesting of rights. The taking of possession by the condemnor, without payment,

does not preclude a discontinuance. *Pine Bluff, etc., R. Co.* v. *Kelly,* 78 Ark. 83, 93 S. W. 562. Nor does the making of the deposit which is required as a condition precedent to interlocutory possession preclude a discontinuance. *Reynolds* v. *Louisiana, etc., Railway Co.,* 59 Ark. 171, 26 S. W. 1039.''

Under our statute the right of appropriation of the landowner's land becomes an option to acquire the land upon the rendition of the judgment assessing value, which must be exercised within 30 days, but which expires if not exercised within that time, by the payment of the award. Section 5004, Pope's Digest, reads as follows: ''In all cases where such company shall not pay or deposit the amount of the damages assessed as aforesaid within thirty days after such assessment, they shall forfeit all rights in the premises.''

Now while the authority to dismiss such proceedings exists until the rights of the parties have reciprocally vested, and abates by operation of law if the award is not paid within thirty days, the condemnor is liable for any damages occasioned by the deprivation of any use of the land to which it would prudently have been put, after the option comes into existence, until the notice is given that it will not be exercised.

A well-considered case on the subject of the right to abandon the proceedings is that of *S. Carolina State Highway Dept.* v. *Bobotes,* 180 S. C. 183, 185 S. E. 165, 121 A. L. R. 1, in which case the headnote reads as follows:

''In a state in which the Constitution provides that private property may not be taken for public purposes without just compensation first being made therefor, a condemnation proceeding instituted by the State Highway Department may, in the absence of any statutory provision to the contrary, be abandoned, with consequent nonliability for the amount awarded, even after judgment has been entered on a jury's assessment of the value of the property and an appeal therefrom has been noticed, where the taking has not been completed by

entering into possession or by paying or tendering the amount of the final award; and neither a tender of the preliminary award made by a commission, from which an appeal was taken to the court, nor the deposit of the amount with the state treasurer pending the appeal, not accompanied by actual entry, has the effect of completing the taking.''

Cases apparently from all the states of the union are there cited and reviewed in the annotator's note, the decisions being based upon the respective statutes which they construed and the annotator summarizes his review with the statement that, ''While the right to abandon condemnation proceedings may be relinquished by agreement or lost by estoppel, the general rule that in the absence of a statute fixing the time within which a discontinuance may be had, an eminent domain proceeding may be discontinued at any time before the rights of the parties have become reciprocally vested, is unquestioned.'' We have no statute fixing the time within which there may be a discontinuance, but we have on the contrary a statute which abates the proceedings if the award is not paid within 30 days.

Here not only was the deposit fixed by the court in its preliminary order not paid, but the award was not paid, and notice was given that the condemnor had abandoned the proceedings. The court therefore properly held that the city had the right to abandon the attempt to condemn the land for airport purposes. The city insists, however, that the court erred in not dismissing the entire case and this contention presents a more serious and difficult question.

Now the city's right to condemn is absolute and is unquestioned, and the landowner can ask only in such proceedings that he be paid the value of his property. The airport act, *supra,* provides that the proceedings for the exercise of the right of eminent domain shall be that prescribed by law for the exercise of such power by railroads, and in the case of *St. L., I. M. & S. R. Co.* v. *Ft. Smith & Van Buren R. Co.,* 104 Ark. 344, 148 S. W. 531, it was held (to quote the first headnote) that: ''The sole

object of proceedings to condemn land for railroad pur-poses is to ascertain the compensation to be paid to the owner for his damages, and no provision is made for an issue on the right to condemn; the owner's remedy, when his land is sought to be taken for purposes other than a public use, being by injunction.''

Here the landowners have alleged in an independent suit filed by them, that they have sustained damages which could not have been proved and recovered in the condemnation suit, and their action in filing an independent suit to recover these damages conforms to the opinion of Justice BATTLE in the case of *Pine Bluff & W. R. Co.* v. *Kelly,* 78 Ark. 83, 93 S. W. 562. There it was said that a suit by a railroad company to condemn land for a right-of-way is a special proceeding whose sole object is to ascertain the compensation that the railroad company shall pay for the right-of-way. In that case the railroad company had made the deposit required by the court, and authorized by statute (§ 5002, Pope's Digest), which permitted the railroad company to enter upon the land, before the damages had been assessed, but after doing so, it was decided to abandon the condemnation proceedings. It was held that the railroad company had this right even after entry made, and the court defined the damages and the measure thereof under those circumstances, and it was there said that, ''For all other damages occasioned by torts committed or wrongs done by the railroad company the owners have remedies in actions to recover the same.''

Here it is alleged that the city has been guilty of the wrongful purpose of attempting to condemn land for airport purposes, which was intended for other purposes, to-wit: that lands be acquired not needed or required for airport purposes, but intended to be sold at a profit above the cost of acquisition. This fact was alleged but was not proved, as the cause was disposed of on the pleadings.

Bad faith on the part of the city is alleged, and, if true, constituted a cause of action, which would have entitled the landowners to recover a reasonable attor-

ney's fee and any damages that may have resulted from placing a cloud upon the title during the period of the existence of the option to acquire the land. Section 339, Chap. Eminent Domain, Vol. 30, C. J. S., § 339, p. 15.

It was said in the case of *Young* v. *Gurdon,* 169 Ark. 399, 275 S. W. 890, that: "It is a sound principle to apply under the doctrine of eminent domain that no more property of a private individual, and no greater interest therein, can be condemned and set apart for public use than is absolutely necessary. Cooley on Constitutional Limitations, 7 Ed., p. 779; Mills on Eminent Domain, p. 110, § 23."

Now the city had the right to determine what land it would condemn for airport purposes, and the quantity thereof, and if the case were tried at law, no question could have been litigated except the value of the land which it proposed to take. Had the property owners thought that more land was being condemned than was required, or that land was about to be condemned which would not be devoted to airport purposes, but was being acquired for sale at a profit, an answer should have been filed raising those questions, with a motion to transfer to equity, as stated in the case of *St. L., I. M. & S. R. Co.* v. *Ft. Smith & Van Buren R. Co., supra.* (*City of Richmond* v. *Carneal,* 129 Va. 388, 166 S. E. 403, 14 A. L. R. 1341.)

Upon the transfer to equity, had that relief been asked, not only could these questions have been determined, but the value of the land could have been adjudged, had the contention of the landowners been sustained, this being upon the theory that the chancery court having obtained jurisdiction for one purpose, would retain jurisdiction for all purposes. This was not done and the right of the landowners to litigate these questions must be deemed to have been waived, and especially so as the city is not now trying to appropriate this excess of land, or any land whatsoever for that matter. The landowners make no allegations as to the time when they obtained information as to the wrongful purposes of the city, and they apparently elected to take the chance of

making an advantageous sale of the land to the city, and will not now be permitted to litigate a question which they had the right to have decided in another forum. *St. L., I. M. & S. R. Co.* v. *Faisst,* 99 Ark. 61, 137 S. W. 815.

The court made no allowance of an attorney's fee in computing the costs of the condemnation suit (which the city has paid), and this was correct. There is no authority in the law for the allowance of this fee as costs. Ordinarily a litigant who has successfully defended against the assertion of a demand against him must pay his own attorney and cannot recover a fee for his attorney, absent any statute authorizing this to be done, or an implied contractual obligation, which has been breached, as in the case of a grantee in a warranty deed who has been required to defend his title. *Beach* v. *Nordman,* 90 Ark. 59, 117 S. W. 785; *Brawley* v. *Copelin,* 106 Ark. 256, 153 S. W. 101; *O'Bar* v. *Hight,* 169 Ark. 1008, 277 S. W. 533; *Ark. Trust Company* v. *Bates,* 187 Ark. 331, 59 S. W. 2d 1025.

Another case which contains an annotation of the right to dismiss a condemnation proceeding is that of *McCready* v. *Rio Grande W. Ry. Co.,* 30 Utah 1, 83 Pac. 331, 8 Ann. Cas. 734, and appended to this case is the following note by the annotator:

"The holding of the reported case to the effect that, in the absence of statutory authority, a party who voluntarily and in good faith dismisses proceedings brought by him for the condemnation of land is not liable to the landowner for the expenses the latter was put to in employing counsel and hiring expert witnesses, and his own loss of time and expenditures made in the defense of such suit, finds support in the following cases (citing cases): These decisions appear to be based upon the ground that, in the absence of conduct on the part of the plaintiff in the condemnation proceedings which would give rise to a cause of action *in tort,* the condemning party cannot be held guilty of a legal wrong in bringing an action authorized by law and in *bona fide* dismissing it at a time and under circumstances warranting it, since he has been within his legal rights; and that if the land-

owner necessarily incurred expense in preparing his defense to the condemnation proceedings, it is a case of *damnum absque injuria,* for which no recovery can be had. *Bergman* v. *St. Paul, etc., R. Co.,* 21 Minn. 533.''

We conclude therefore, that the court properly permitted the city to dismiss the condemnation proceedings, but erred in refusing to dismiss the entire proceedings. The cause will, therefore, be remanded with directions to dismiss the suit.