Thomas G. NIESEN and Ann M. NIESEN
*v.* CARROLL ELECTRIC COOPERATIVE
CORPORATION

78-160                                                  575 S.W. 2d 686

Opinion delivered January 22, 1979
(In Banc)

*John B. Hawley,* for appellants.

*Dickson & Ball,* for appellee.

CONLEY BYRD, Justice. Carroll Electric Cooperative Corporation filed an eminent domain action for a right-of-way on lands owned by Thomas G. and Ann M. Niesen and at the same time secured an order for immediate possession. The Niesens filed a counterclaim challenging the validity of the order of possession entered by the Circuit Court on the basis that the statutes upon which Carroll Electric relied were unconstitutional. In the same pleading the Niesens alleged:

> "The Niesens say further that Carroll Electric has taken land in excess of the easement sought by the Complaint, that such taking is trespass for which the Niesens are entitled to damages. The Niesens say that if the condemnation of the described easement is proper under the existing complaint then they are entitled not only to recover full value of the land lost to the easement but also diminished value to adjacent land, additional damage for trespasses inflicted and a clear, precise and restrictive declaration of the exclusive uses for which the easement can be employed."

In addition the Niesens prayed for damages in the total amount of $246,700 including punitive damages of $200,000.

The Circuit Court ruled that the constitutional issues were non-damage questions which the Circuit Court was not entitled to hear and transferred the matter to Chancery. The Chancery Court, after the submission of briefs and arguments, ruled against the Niesens on the validity of the order of possession and the constitutionality of the statutes involved. The order entered by the Chancery Court, in so far as here pertinent, provides:

> "IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the allegations contained in defendants' counterclaim wherein the constitutionality of Arkansas Statutes Annotated Section 35-301 et seq, and Section 73-240 and 242 are without merit and should be and are hereby dismissed for want of equity.
>
> IT IS FURTHER ORDERED that since the remaining issues raised by the pleadings of the parties in this case are issues of law which are clearly cognizable in Circuit Court with the aid of a jury, this cause is transferred back to the Madison County Circuit Court for resolution of the said remaining issues in that forum."

As can be seen from the foregoing the Chancellor only dismissed a part of the Niesen's counterclaim — leaving for trial in the Circuit Court those portions that presented a triable issue. Such an interlocutory order is not a final order from which an appeal can be taken, *Independent Insurance Consultants, Inc.* v. *First State Bank of Springdale,* 253 Ark. 779, 489 S.W. 2d 757 (1973).

Appeal dismissed.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. I disagree with the majority in that I think the circuit court in this case was wrong in transferring the matter to chancery court for a rul-

ing on constitutional issues. The circuit court could have ruled on these issues and should have done so. It is not a serious quarrel that I have with the majority except these appellants are, no doubt, frustrated in their legal efforts to prevent their land from being taken and in my opinion their case deserves more attention.

Appellants allege their land was taken illegally and arbitrarily. First, they claim, and it is not disputed, that the appellee was granted possession of the property without any notice *whatsoever* to the appellants. I know of no authority or procedural due process that permits such action. Any law that would permit such action, except in the direst circumstances, would, no doubt, violate the due process clause of the United States and Arkansas constitutions. Any court order granting such relief without notice would be equally questionable.

The appellee claims that it did not actually take possession under the order.

The appellants also raise the question of whether the appellee had the right to take the land because there was no prior approval of the project by the Arkansas Public Service Commission. The appellee argues that *it* determines what is for the public use and necessity by virtue of Ark. Stat. Ann. § 35-301 (Repl. 1977). After the proceeding was filed, the appellee did obtain a permit from the Public Service Commission to construct a transmission line. (See Ark. Stat. Ann. § 73-240 et seq [Repl. 1977]). This record does not reflect if the Public Service Commission used its rubber stamp or not. Surely the appellants will be permitted to pursue this question of who determines necessity during litigation. The majority implies that these issues may be litigated or preserved for what appears to be a third appearance before this court.

After two appearances before two trial judges, a circuit judge and a chancery judge, and two appearances before us, they can fairly conclude that they are getting the legal runaround. The appellants, like many landowners, are no doubt frustrated in their effort to preserve their land and so far have found no legal remedy to prevent it. Historically and legally, such efforts have failed. It has been taken for granted

by the legal community that any condemning authority that wants to condemn any property may do so without any serious threat of being challenged successfully in the courts.

The power of eminent domain exists only for the public good. It should no longer be presumed that all eminent domain procedures may proceed unquestioned. We have reached that point in our history where all land — our land, posterity's land — must be utilized carefully, conservatively and, if used for the public, then only as necessary for the public benefit. Too long has Arkansas been criss-crossed with highways, railroads, pipelines, utility lines and what not without any serious effort on the part of the government to coordinate such actions. There is even a fertilizer pipeline across part of the State of Arkansas. No doubt it is for the good of the public.

Property owners have had to stand by and see the best land in this state utilized for such purposes without any real hope of successfully resisting those efforts. While theoretically the necessity for such actions can be challenged, as a practical matter they cannot be.

No doubt such powers and procedures need to be reviewed by the legislature. It will not be an easy nor a pleasant task. In the interim, the courts should do their duty and scrutinize such procedures and powers for compliance with due process as well as existing laws that require a determination of necessity for such projects.

The appellants allege their land was bulldozed, and from their counterclaim it is evident that their displeasure is not simply a matter of money. Quite often money does not satisfy a landowner when property is taken. Utility is not the only function of land. Sometimes beauty is a desirable quality. So far the appellants have been unable to present their legal arguments to the trial courts or to us with any satisfaction. We in the legal community should begin to examine our cases and listen to the arguments that are presented by litigants rather than take them for granted.

The appellee seems to be proceeding as all condemning authorities have proceeded, and the same is true for the trial

judges, and they should not be held out as distinctive. It is simply time to review our procedures and laws relating to eminent domain.