CITY OF BRYANT *v.* SPRINGHILL WATER AND SEWER SERVICES, INC., Randy Oberlag and Minanur Rahman and First Commercial Bank

87-251                                        749 S.W.2d 295

Supreme Court of Arkansas
Opinion delivered May 2, 1988
[Supplemental Opinion on Denial of Rehearing June 6, 1988.*]

---

*Holt, C.J., and Hickman, J., concur on rehearing.

*Richard A. Garrett*, for appellant.

*Kaplan, Brewer & Miller, P.A.*, by: *Philip E. Kaplan* and *Silas H. Brewer, Jr.*, for appellee.

DAVID NEWBERN, Justice. The appellant, City of Bryant, brought a condemnation action to obtain a utility, appellee Springhill Water and Sewer Services, Inc., a water and sewer system operated in a city subdivision. The company was owned by appellees Randy Oberlag and Minanur Rahman. Appellee First Commercial Bank held a mortgage. Oberlag and Rahman purchased the utility in 1983 from a bankruptcy trustee for $80,000, some of which was refunded, making their effective cost $54,675. The city filed the action in July, 1986, and deposited $3,000 with the court as prospective compensation, later raising the amount to $10,000. The court entered an order putting the city in possession of the utility on July 17, 1986. The bank became a party, seeking foreclosure of its mortgage. The court then ordered the city to deposit $85,000. The money was not deposited. The parties stipulated that the bank was entitled to recover the mortgage obligation from the condemnation proceeds. The bank is thus not a party to the appeal. The city moved to dismiss the action on December 8, 1986, ten days before the compensation issue was to be tried. The motion was denied. The jury awarded Oberlag and Rahman $350,000 for the utility and $25,000 for accompanying real property which was taken. A judgment was entered in favor of Oberlag and Rahman for those amounts less the $10,000 on deposit and the bank's interest of $61,249.39. We reverse the judgment because the city's motion to dismiss should have been granted to the extent of allowing it to abandon the condemnation.

In *Selle* v. *City of Fayetteville*, 207 Ark. 966, 184 S.W.2d 58 (1944), we considered the questions whether, when, and upon

what conditions a condemnation proceeding may be abandoned. We held it was proper for the trial court to have dismissed the City of Fayetteville's proceeding to condemn land for use as an airport, recognizing the general rule that, absent a statute providing for abandonment, the condemning authority may withdraw anytime "before the rights of the parties have become reciprocally vested." According to a statute, now codified as Ark. Code Ann. § 14-360-102(b) (1987), the city was to use the procedure applicable to condemnations by railroad companies, now codified at Ark. Code Ann. §§ 18-15-1201 through 18-15-1207 (1987). Section 18-15-1207 provides that if payment has not been made for the condemned property within thirty days after assessment, the railroad company forfeits its rights in the premises. Based on that section, we held that the City of Fayetteville had an option to abandon its condemnation action anytime before it paid and up until thirty days after the court had assessed the value of the land to be taken.

Our holding in the *Selle* case does not apply here, as neither the statutes permitting the exercise of eminent domain by a municipality, Ark. Code Ann. §§ 18-15-301 through 18-15-308 (1987), nor the statutes specifically permitting a city waterworks authority to condemn a property for use as a waterworks, Ark. Code Ann. §§ 18-15-401 through 18-15-410 (1987), refer to the railroad condemnation statutes or any other procedure. We thus cannot apply the conclusion reached in the *Selle* case that the city has up until thirty days after the award to abandon the condemnation. Obiter dictum in the opinion is, however, persuasive and useful in deciding the case before us now.

Our discussion of the general "reciprocal vesting" rule in the *Selle* case included references to "the majority . . . holding that the rights of the parties are not vested until the amount of the award is paid, or the land is taken, while in some jurisdictions the confirmation of the award by the court vests the rights of the parties and precludes discontinuance." 207 Ark. at 970, 184 S.W.2d at 61. We held in *Rowley* v. *Arkansas State Highway Commission*, 242 Ark. 419, 413 S.W.2d 876 (1967), that the highway department could not amend its condemnation complaint to seek less land than originally sought because a statute, now codified as Ark. Code Ann. § 27-67-315 (1987), provided, "Immediately upon the making of the deposit provided for . . .

*title* to said lands in fee simple . . . *shall* vest in the persons entitled thereto. . . . (Emphasis by the court.)" Thus, as had been suggested in the *Selle* case, we regarded the title-vesting point as the point of no return.

■ The statute dealing with condemnation of waterworks property by a municipal authority, Ark. Code Ann. § 18-15-404 (1987), provides:

> (a) At the trial of the cause, a jury shall assess the amount of damages the applicant shall pay for the property taken in the proceedings.
>
> (b) Thereafter, a judgment shall be entered stating that *title* to the property *shall vest* in the applicant *upon payment* to the clerk of the court *of* the amount of *damages so assessed.* (Emphasis supplied.)
>
> . . .

Given the fact that there had been no "reciprocal" or other vesting of title at the time the city sought to dismiss its condemnation proceeding, the dismissal of the city's condemnation claim should have been allowed, but the court should have retained jurisdiction of the matter to consider damages to compensate the appellees for the temporary deprivation of their property. In the *Selle* case we wrote:

> Now while the authority to dismiss such proceedings exists until the rights of the parties have reciprocally vested, . . . the condemnor is liable for any damages occasioned by the deprivation of any use of the land to which it would prudently have been put, . . . until the notice is given that it [the "option" to take] will not be exercised. [207 Ark. at 971, 184 S.W.2d at 61]

We remand the case to the trial court for orders consistent with this option.

Reversed and remanded.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I would reverse the

decision for other reasons, but I would not allow the city to dismiss its action after it had taken the property.

The power of eminent domain is awesome. Private property owners who have been subjected to the arbitrary and often abusive use of this power can attest to that. The courts have always liberally interpreted the law to favor the use of that power. Abuses of the power are often overlooked in the name of "progress," or some other misguided concept of our society. *Columbia County Rural Development Authority and the City of Magnolia, Arkansas* v. *Hudgens,* 283 Ark. 415, 678 S.W.2d 324 (1984); *Young* v. *Energy Transp. Systems Inc. of Ark.,* 278 Ark. 146, 644 S.W.2d 266 (1983); *Neisen* v. *Carroll Electric Corp.,* 264 Ark. 881, 575 S.W.2d 686 (1979).

Taking property is one thing. Now the majority has liberally interpreted the law to allow a government agency to cancel a taking of property after it has realized it might be costly and a jury of fairminded men would decide the value of the property. I would not liberally interpret the law to favor such an abusive use of the power.

Surely attorney's fees will be a part of the damages suffered by these property owners because of the wrongful use of the power of eminent domain.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING JUNE 6, 1988

750 S.W.2d 61

336-B

DAVID NEWBERN, Justice. The appellees seek rehearing on the ground that our opinion fails to follow *Missouri Pacific Ry. Co.* v. *Huggins*, 253 Ark. 309, 485 S.W.2d 723 (1972), which the appellees cited in their brief. They contend that we have overruled that case without citation or discussion of it.

In the *Huggins* case, the railroad instituted condemnation proceedings against land adjacent to its right-of-way for the purpose of removing a large protruding rock which threatened to fall on the right-of-way. After the order of entry, the railroad entered the land and removed the rock. It then sought to dismiss the condemnation proceedings subject to any damages the landowner had sustained. We wrote:

> We hold that when a railroad posts bond, obtains an order of taking, enters upon the property and completes its work, it is obligated to pay just compensation based upon the difference in fair market value before and after the taking. This is based on the rule that fundamental fairness dictates that there should be a point at which the railroad cannot turn back and escape the payment of full compensation based on a taking. [Citations omitted].

We did not cite the case because we regard it as unique and, like *Selle* v. *City of Fayetteville*, 207 Ark. 966, 184 S.W.2d 58 (1944), which we cited for general language but carefully distinguished, the *Huggins* case is one to which the railroad condemnation statutes would apply rather than the waterworks condemnation statutes. We noted in the *Huggins* case that the condemnation proceedings there were to add the land on which the rock was situated to the railroad right-of-way, and that the damages were to be "based upon" the difference in the value before and after the right-of-way taking as opposed to the market value of the land taken. The fee title to the land was apparently not to change hands. There was not to be a "reciprocal vesting" of fee title at any point. The railroad had entered the land and "complet[ed] its work." Unlike this case, there was nothing for the railroad to give back to the owner of the property upon the

abandonment of the condemnation proceeding. The railroad's purpose in obtaining right-of-way had been completely accomplished. Had the railroad succeeded in dismissing the condemnation proceeding, it would have, in effect, obtained its right-of-way, having to pay only the difference in the value of the land before and after removal of the rock rather than the difference in value "based on" a taking. The same "fundamental fairness" considerations would apply here, if the situation were the same, but it is not. The *Huggins* case has not been overruled.

Rehearing denied.

HOLT, C.J., and HICKMAN, J., concur.

DARRELL HICKMAN, Justice, concurring. The appellees on rehearing have prompted the majority to expand its decision justifying the city's action in withdrawing from its abusive use of the power of eminent domain.

Each generation of judges has taken the side of government over that of the individual owner of private property, forgetting that as time goes on exploitation of land and property by the government and its agencies should stop.

In this case the city took the water company, fired its employees, ran the water works for five months, and then walked out. Fairness under our decision in *Missouri Pacific Railroad Co. v. Huggins*, 253 Ark. 309, 485 S.W.2d 723 (1972), dictates that we not permit the city to cancel the taking.

HOLT, C.J., joins the concurrence.