Robert A. VOGEL and Luanne Vogel *v.* CRITTENDEN COUNTY, Arkansas

90-220                                             822 S.W.2d 382

Supreme Court of Arkansas
Opinion delivered February 3, 1992

*Hilburn, Calhoun, Harper, Prunisiki & Calhoun, Ltd.*, by: *David M. Fuqua*, for appellants.

*Hale, Fogleman, & Rogers*, by: *Joe M. Rogers*, for appellee.

WILLIAM R. WILSON, JR., Special Justice. This is an appeal from a circuit court order which: (1) granted appellee's motion to dismiss a condemnation proceeding after a consent judgment had been entered; (2) denied appellant's motion to enforce the consent judgment; (3) denied appellants' claim for damages; (4) denied appellants' motion to reopen the record; and (5) awarded appellants an attorneys' fee (the latter being the subject of a cross-appeal by appellee). We affirm on direct appeal and reverse on cross-appeal.

In July of 1986, appellee Crittenden County (County) filed an application with the Arkansas Industrial Development Commission (AIDC) for funds to expand and remodel the Crittenden County Health Facility. On December 14, 1987, this facility was hit by a tornado and, thereafter, the County decided to purchase and renovate property owned by appellants, Robert and Luanne Vogel. A skating rink is located on this property. The County amended its AIDC application to seek funds for the purchase of this property, and it also decided to apply for funds from the Economic Development Agency (EDA) to renovate the property.

On May 11, 1988, the County offered to buy the Vogels' property for $300,000.00, but this offer was rejected.

On May 25, 1988, the AIDC approved the County's amended application.

The parties agreed that the County would pay $315,000.00 for the property, and also agreed that it would be acquired through a "friendly" condemnation action. On September 7, 1988, the County filed a complaint for condemnation; the Vogels answered, and on September 8, 1988, a judgment of condemnation was entered placing the fair market value of the property at $315,000.00.

Among other things, the judgment provided that:

. . .Upon the Plaintiff paying the Defendants the sum of

$315,000.00, the fee simple title to the lands described herein above . . . (shall) . . . be and thereby is confirmed invested in the Plaintiff. . . .

In late November of 1988, the AIDC notified the County that, because an environmental assessment had not been completed before the entry of the condemnation judgment, the AIDC grant could not be used to purchase this particular facility. The environmental assessment was completed before the hearing in the trial court, which was conducted in July of 1989.

At the hearing, Mr. Robert Middleton, Director of Community Assistance for the AIDC, testified that, while it was placing "form over substance," the AIDC grant could not be used for the purchase of the Vogels' property even though a favorable environmental assessment had been received *after* the judgment of condemnation.

The Vogels argue that Mr. Middleton's testimony, and other evidence, is open to the interpretation that the AIDC funds were still available for this project. Viewing the evidence as a whole, we disagree with this position; but, be that as it may, the applicable law discussed below renders this question moot.

In *Selle* v. *City of Fayetteville*, 207 Ark. 966, 184 S.W.2d 58 (1944), we held that a condemnor has an absolute right to discontinue a condemnation action until actual payment of the compensation. Other jurisdictions have held that such an action may not be discontinued after judgment, but in *Selle* we rejected the latter view.

Furthermore, in this case, the judgment of condemnation, approved by both parties, specifically provided that title would vest only upon payment of the $315,000,00.

The Vogels contend that this case can be distinguished from *Selle* because that case involved a jury trial, verdict, and judgment, whereas, in this case, there was a consent judgment. For this proposition, however, the Vogels cite no authority on point, and we find none. We, therefore, decline to make such a distinction.

As an alternative to their request for enforcement of the consent judgment, the Vogels asked for damages caused by the

County's failure to purchase their property. Since we hold that the County had the right to discontinue the proceedings, the Vogels are not entitled to damages as a result of the County's exercising this right.

■ Next, after the order granting the County's motion to dismiss was entered on August 11, 1989, the Vogels filed a motion to reopen the trial record to allow the introduction of additional evidence and to set aside the order. Attached as an exhibit to this motion was a newspaper article indicating that the County had received an EDA grant to build a *new* health facility. Even assuming for the purposes of argument that a newspaper article could constitute a sufficient basis for setting aside a judgment or final order, we find that the trial court properly denied this motion. The evidence established that the *purchase* of the Vogels' property was to be from funds provided by the AIDC grant (if approved). This grant was disapproved. The funds from the EDA were to be used for renovation, not purchase.

■ Finally, the County cross-appeals and asserts that the trial court erred in awarding attorneys' fees to the Vogels. Under existing Arkansas law, a condemnee can recover damages in the form of attorneys' fees only if the condemnor is found to have acted in bad faith. *Housing Authority of the City of North Little Rock* v. *Amsler*, 239 Ark. 593, 339 S.W.2d 268 (1965); *Housing Authority of the City of North Little Rock* v. *Green*, 241 Ark. 47, 406 S.W.2d 139 (1966).

The Vogels offered some evidence suggesting that the County dropped its effort to secure the AIDC grant because of public protest over the closing of the skating rink. The County's evidence, on the other hand, reflected that the payment for the property was conditioned upon the procurement of the AIDC grant, and that the AIDC grant failed because of a snafu in the application process. The trial court credited the County's evidence, and there is ample evidence in the record to support this finding.

■ Although the trial court specifically found that the County did not act in bad faith, it awarded the Vogels an attorneys' fee of $1,719.95 (the trial judge stating that he was doing this "whether I had the authority to do it or not and . . . [I'll] . . . let the higher Court take care of it. . . ."). Since we

uphold the trial court's finding that the County did not act in bad faith, we reverse the award of attorney's fees.

Affirmed on direct appeal and reversed and remanded on cross-appeal.

Special Justice WILLIAM H. KENNEDY, III, dissents.

CORBIN and BROWN, JJ., not participating.

WILLIAM H. KENNEDY III, Special Justice, dissenting. I dissent in part from the majority's decision. I dissent solely from the majority's reversal of the trial court's award of attorney fees and expenses to appellants.

In this case, following negotiations for purchase of the subject property, Crittenden County's condemnation action was apparently filed at the request of the Vogels, who perceived a tax benefit therein. Entry of judgment followed almost immediately. The complaint was filed on August 31, 1988, an answer was filed on September 7, 1988, and a judgment of condemnation was entered on September 9, 1988. Crittenden County subsequently abandoned its condemnation action for the reasons stated in the majority's opinion.

Although the action was abbreviated, when compared to the normal progression of such actions when tried, the Vogels incurred significant attorney fees therein which they were awarded by the trial court.

As the majority correctly states, a condemnor in Arkansas has an absolute right to discontinue a condemnation action until actual payment of compensation, *Selle* v. *City of Fayetteville*, 207 Ark. 966, 184 S.W. 2d 58 (1944), and attorney fees and expenses may be awarded in condemnation actions where the condemnor abandons the action in bad faith. *The Housing Authority of the City of North Little Rock, Ark.* v. *Amsler, Judge*, 239 Ark. 592, 393 S.W.2d 268 (1965).

Applying the rule of *Housing Authority* v. *Amsler, supra*, to this case, I concur with the majority in finding that Crittenden County did not act in bad faith. The record is, however, replete with examples of the mishandling of this action by Crittenden County, arguable rising to the level of negligence. The Vogels were indisputably poorly served by Crittenden County, and have

been left holding a bag of significant fees and expenses apparently incurred in good faith and in reliance upon Crittenden County's assurances.

I believe proving bad faith where a condemnor abandons an action of eminent domain an impossible burden for a citizen to uphold. I would hold, instead, that in actions such as this one where (i) a condemnation action is filed by a governmental agency, a quasi-governmental agency, or a private entity with the power to condemn; (ii) the cause proceeds to judgment, either by trial or by consent; and (iii) the action is subsequently abandoned by the condemnor, the landowner is entitled to recover attorney fees and expenses, such as costs of experts and appraisers, directly incurred in defending the action.

By so holding, I do not depart from the general rule that attorney fee awards are not authorized in the absence of a statute so providing. As set forth above, that departure has previously been made by this court in *The Housing Authority of the City of North Little Rock, Ark.* v. *Amsler, Judge, supra.* I would change only the standards of that case applicable to such awards.

While the majority view of this country is that no attorney fees or expenses in condemnation actions abandoned by the condemnor may be awarded without a statute providing therefor, in the absence of bad faith or unreasonable delay, Annot., 92 A.L.R. 2d 355, 366 (1963), there are cases to the contrary. *Id.* *See Long* v. *Commonwealth*, 37 Pa. D & C 702, 56 Montg. Co. LR 112 (1940); *Fairmont & V. R. Co.* v. *Bethke*, 37 S.D. 446, 159 N.W. 56 (1916); *Marist Soc. of Georgia* v. *Atlanta*, 212 Ga. 115, 90 S.E.2d 564 (1955).

Indeed, although the court does not follow this precedent, this court has held that a trial court has *an inherent right* to require the condemnor to pay such expenses, regardless of statutory authority:

> It is certainly reasonable to assume that a property owner would be under great pressure to sell his property to [a condemning agency] for less money if he knows that otherwise he may have to spend hundreds or thousands of dollars and get absolutely nothing in return. When the [condemning agency] (which is supported by taxes) forces

a property owner into a state court (which is also supported by taxes) to ask a jury to fix the price it must pay the owner and then chooses to renege simply because the jury verdict is not to its liking, then, we submit, the trial court must have the inherent right to require the [condemning agency] to reimburse the owner (for all legitimate and reasonable expenses), otherwise the court is powerless to protect its own processes, the property owners, and the constitution.

*The Housing Authority of the City of North Little Rock, Ark.* v. *Amsler, Judge,* 239 Ark. 592, 595, 393 S.W.2d 268, 270 (1965).

Evidently the majority view rests on the legal theory that all property is subject to actions of eminent domain by the government, and that damages which a landowner suffers incident to exercise of such power are *damnum absque injuria,* as the condemnor is exercising its legal right. 92 A.L.R. 2d 355, 358, *supra.* This is a fine statement of abstract principle, but hard to swallow in light of the way our adversarial legal system works.

I consider the minority view far the better position. The sovereign's exercise of eminent domain is awesome. It is second in impact, in my opinion, only to the sovereign's power to kill or imprison. The effect of an eminent domain action upon a citizen is so drastic that protections against the harm caused thereby have been set forth in the United States and Arkansas constitutions, which provide, of course, that property may not be taken by the sovereign without just compensation and due process of law. U.S. Const. amend. V; Ark. Const. art. 2, § 22.

An action of condemnation is a voluntary action of the sovereign, never compelled. It is something the sovereign may choose to do or forbear from doing, as it pleases. The citizen is thus at the mercy of the sovereign; the citizen may not initiate nor halt such proceedings. And there is generally a severe disparity of resources between the sovereign and the citizen. Even though current and historical governmental fiscal difficulties are well known, when a condemning agency drags a citizen to court, the agency generally has the hammer.

A citizen owning property the subject of a condemnation action, if not offered fair value therefor, has only two choices: he

may either abandon the fight and accept less than he feels his due, or hire attorneys and experts and pursue the issue in the appropriate forum. This is often an expensive and draining endeavor. To hold, as the majority does, that a citizen choosing the latter course must bear the considerable expense of attorney fees and costs if he takes the agency to task and judgment, if the agency ultimately abandons the action before the citizen's rights to compensation have vested, is a most unfair, and, in my opinion, unnecessary result.

To hold instead that a condemning agency abandoning a condemnation action after judgment must pay the attorney fees and costs which it has forced a citizen, by condemning his property, to spend in defense will not only recompense the damages suffered by the citizen but will also serve to ensure that the sovereign does not commence and then abandon such actions lightly.

Under the majority's holding, and the *Selle* case, a citizen is at the dubious mercy of the essentially unfettered discretion of the sovereign. There is nothing in the majority's holding to protect landowners from the "futile and unnecessary trouble and expense of condemnation proceedings which are ultimately abandoned," *State* v. *Nelson*, 125 N.W.2d 166, 168 (Minn. 1963), nor is there anything "to prevent condemning authorities from bringing successive proceedings with a view to discontinuing and relitigating those in which the awards appeared excessive." *Id.*

I agree with Judge McFaddin's dissent in *The Housing Authority of the City of North Little Rock, Ark.* v. *Amsler, Judge, supra*:

> My personal feelings are on the side of the landowner in this case, as in most other eminent domain cases. A citizen buys property with his own money, pays taxes, and improves his property under the belief that his home is his castle. Then one fair day some public agency—be it the Highway Commission, the Housing Authority or what not—decides to take the citizen's property because the Legislature has granted such public agency the power of eminent domain!

> And what happens? The citizens (sic) is hailed into court;

the public agency, with the power of eminent domain, makes the citizen either accept the small amount determined *ex parte* by the public agency to be the value, or else the citizen, at his own expense, must employ an attorney and fight the public agency to get what the citizen feels he is entitled to receive. Finally, the citizen gets a jury verdict in his favor for the value of the property taken by the public agency; but the citizen does not recover from the public agency the amount the citizen has paid for attorney's fees; so the citizen is never made whole! 239 Ark. at 597, 393 S.W.2d at 271.

In this case, the lower court was offended at the result imposed by the majority rule regarding attorney fees and costs, and awarded attorney fees to the landowner despite being unsure of its authority so to do. In so doing, the court addressed the majority's position, and said: "I just don't think it is right."

Neither do I. I would affirm the trial court's award of attorney fees.